IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TRACY HURLEY,<br><br>Plaintiff,<br><br>v.<br><br>CONNECTIONS COMMUNITY SUPPORT PROGRAMS, INC., et al.,<br><br>Defendants. | Civil Action No. 20-895-RGA |

MEMORANDUM ORDER

Before the Court is Connections' Motion to Dismiss for Failure to State a Claim.[1] (D.I. 3). The motion has been fully briefed. (D.I. 4, 6, 7). For the reasons set forth below, the motion is GRANTED.

## I. BACKGROUND

Connections is a corporation under contract with the Delaware Department of Corrections to provide medical care in state correctional facilities, including Baylor Women's Correctional Institute. (D.I. 1, Ex. A at ¶ 34). In 2018, Tracy Hurley was an inmate at Baylor. (*Id*. at ¶ 1).

Ms. Hurley suffers from intestinal blockages. (*Id*.). On or around March 3, 2018, Ms. Hurley was diagnosed with an intestinal blockage while in "Medical" at Baylor. (*Id*.). On March 5, Ms. Hurley was admitted to St. Francis Hospital and diagnosed with a bowel obstruction. (*Id*. at ¶ 2). While in the hospital Ms. Hurley was treated with an N/G tube. (*Id*.). Ms. Hurley was discharged on March 10 and returned to her dorm at Baylor on March 11. (*Id*. at ¶¶ 3-4).

[1] The other four defendants have filed a separate motion to dismiss. (D.I. 13).

On March 12, Ms. Hurley became ill and was taken back to the St. Francis Hospital Emergency Room and treated with an N/G tube. (*Id*. at ¶ 5). She was admitted to St. Francis until March 22 and then transferred to Baylor's medical unit for observation. (*Id*. at ¶ 6). She remained in the medical unit until March 26. (*Id*.).

On March 26, Ms. Hurley alleges she did not receive all her prescribed medications, including prednisone. (*Id*. at ¶ 7). "For the next several medical distributions," Ms. Hurley did not receive prednisone, though the Complaint notes she would "occasionally" receive prednisone from the nurses. (*Id*. at ¶ 8). During an unspecified time period between March 26 and April 6, Ms. Hurley's health declined; she was unable to eat, nauseous, vomiting, and not passing stool. (*Id*.). Ms. Hurley complained to Medical about her declining health and about not receiving prednisone. (*Id*. at ¶¶ 8-9).

On April 6, Ms. Hurley became violently ill and at approximately 9 p.m. her cellmate requested help from Medical via the unit officer. (*Id*. at ¶ 10). Medical did not arrive until approximately 2:30 a.m. (*Id*. at ¶ 12). Once Medical arrived, Ms. Hurley had to wait an additional half hour for a wheelchair and was then placed in an observation cell. (*Id*. at ¶ 13). Ms. Hurley was vomiting bile and requested non-oral nausea medication since she could not keep anything down. (*Id*. at ¶ 18). Her request was denied. (*Id*.). Ms. Hurley further alleges that the medical staff refused to page the doctor "until a reasonable hour." (*Id*. at ¶ 13).

Ms. Hurley was eventually transported to St. Francis Hospital's Emergency Room with a doctor's consent. (*Id*. at ¶ 14).

On these factual allegations,[2] Ms. Hurley asserts a deliberate indifference claim against Connections under 42 U.S.C. § 1983. (D.I. 6 at 9). She also asserts a medical malpractice claim

[2] I have not considered the exhibits appended to Plaintiff's briefing or any additional information included therein in deciding this motion.

against Connections under Delaware law.[3] Connections moves to dismiss both claims for failure to state a claim. (D.I. 3).

## II. LEGAL STANDARD

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). When considering a Rule 12(b)(6) motion, I may only consider "document[s] integral to or explicitly relied upon in the complaint," including "any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the Plaintiff's claims are based on the document." *In re Asbestos Prods. Liab. Litig.*, 822 F.3d 125, 133 n.7 (3d Cir. 2016) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1993); *PBGC v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). I am "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d

[3] In her briefing, Plaintiff characterizes her state law claims alternatively as "interfering with medical treatment" and "malpractice." (D.I. 6 at 1-2). As I am unable to identify a standard relevant to "interfering with medical treatment" under Delaware law, I will proceed with the understanding that Plaintiff alleges medical malpractice.

Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 11. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III. DISCUSSION

### A. Deliberate Indifference Claim

As an initial matter, the parties contest whether Plaintiff has properly stated a claim under § 1983. Connections argues that Plaintiff has failed to allege the requisite "personal involvement" that is required in a civil rights claim because Plaintiff has not identified any specific Connections employees responsible for the underlying harms. (D.I. 4 at 7-9). Plaintiff replies that she has only identified a single defendant, Connections – a legal person for purposes of § 1983 – and by the actions of its unnamed employees, Plaintiff has alleged sufficient detail. (D.I. 6 at 10, 14). Plaintiff also argues that, as many of Ms. Hurley's claims are predicated on omissions by Connections staff, it is impossible for her to identify specific employees. (D.I. 6 at 14).

The Third Circuit recently clarified that when proceeding against an institutional defendant, a plaintiff "need not name particular [Connections] employees who were deliberately indifferent." *Parkell v. Danberg*, 833 F.3d 313, 338 (3d Cir. 2016). All that is required is that "a

factfinder could conclude that *some* [Connections] employee was deliberately indifferent and the deliberate indifference can be attributed to [Connections].” *Id*. Here, on the plus side for Plaintiff, the Complaint does specify that all medical staff at Baylor were employed by Connections. (D.I. 1, Ex. A at ¶ 36). On the negative side, however, the failure to identify any particular employee (even if not named) makes it harder to attribute deliberate indifference to one or more Connections’ employees, and to connect any such deliberate indifference to a Connections policy.

Connections also faults Plaintiff for grouping Connections’ employees together in its allegations. (D.I. 4 at 8). Grouping defendants in a complaint is improper where it interferes with the requirement to provide fair notice to all defendants. *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008). Connections relies on *Robbins v. Oklahoma* in arguing that referring to “Connections’ employees” generally is insufficient. (D.I. 4 at 9). Yet, *Robbins* explains:

> In § 1983 cases, defendants often include the government agency and a number of government actors sued in their individual capacities. Therefore it is particularly important in such circumstances that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.

*Id*. As Plaintiff proceeds against Connections rather than any individual medical employee, I do not believe that Plaintiff’s Complaint presents an analogous situation. The only medical defendant, here, Connections, is clearly identified.

It is well settled that corporate or municipal liability under § 1983 cannot flow from a theory of *respondeat superior* or vicarious liability. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (citing *Monell v. NYC Dept. of Soc. Servs.*, 436 U.S. 658, 691, 98 (1978)); *Miller v. Corr. Med. Sys., Inc.*, 802 F. Supp. 1126, 1131-32 (D. Del. 1992). Instead,

a corporation's liability for constitutional violations under § 1983 may be established if Plaintiff provides evidence of a "relevant [] policy or custom, and that the policy caused the constitutional violation they allege." *Natale*, 318 F.3d at 584; *see Price v. Kozak*, 569 F. Supp. 2d 398, 413 (D. Del. 2008).

I will begin with the alleged constitutional violation. Plaintiff argues that the medical employees' conduct described in her Complaint rises to deliberate indifference. (D.I. 6 at 16). Plaintiff primarily focuses on (1) the failure of medical staff to administer prednisone as prescribed; and (2) the delay in arriving to Ms. Hurley's cell when she became ill on April 6. (*Id*.).

In order to state a claim for deliberate indifference under the Eighth Amendment, Plaintiff must plead "(i) a serious medical need, and (ii) acts or omissions by [Connections employees] that indicate deliberate indifference to that need." *Natale*, 318 F.3d at 582. The Third Circuit has found deliberate indifference where, among other situations, "the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

Connections asserts that Ms. Hurley received constitutionally adequate medical care and casts Plaintiff's allegations as medical negligence claims rather than constitutional claims. (D.I. 4 at 12-13). With respect to Plaintiff's specific allegations, Connections argues that the failure to properly administer Ms. Hurley's prednisone and the delay in attending to Ms. Hurley on April 6 cannot support a finding of deliberate indifference. (D.I. 7 at 4-5). In reply, Plaintiff asserts that the medical employees' conduct encompasses a refusal to provide medical treatment, the

interference with Ms. Hurley's prescribed course of treatment, delayed treatment "for a non-medical reason," and the continuance of a course of treatment despite "resultant pain and risk of permanent injury." (D.I. 6 at 16-17). Connections does not address or appear to dispute that Ms. Hurley was suffering from a serious medical condition.

Plaintiff states that she did not receive her prescribed prednisone on March 26 and for "the next several medical distributions." (D.I. 1, Ex. A at ¶¶ 7-8). She then states that "over several days, occasionally, one of the med cart nurses would provide Plaintiff with a dosage of the prednisone." (*Id*. at ¶ 8). Ms. Hurley asserts that her medical care providers "knowingly disregard[ed] the substantial and unjustifiable risk that failing to provide her with steroids would keep her bowel from healing and cause it to remain inflamed." (*Id*. at ¶ 42). However, the Complaint also asserts that "CCSP medical providers failed to perceive the obvious high risk that Tracy Hurley was suffering from a serious abdominal problem and failed to act accordingly." (*Id*. at ¶ 45).[4] In general, the timeline in Ms. Hurley's Complaint is difficult to discern. She appears to allege that Connections employees initially failed to administer prednisone entirely, and then did so sporadically. (*Id*. at ¶¶ 7-8).

This court has routinely held that administering the improper dosage of medication does not constitute deliberate indifference. *See, e.g.*, *Merritt v. Delaware*, 2012 WL 3206235, at *4 (D. Del. Aug. 3, 2012). However, the failure to provide medication can "constitute deliberate indifference if it were to demonstrate that the defendant 'acted with reckless disregard to a known substantial risk of harm.'" *Crawford v. Corizon Health, Inc.*, 2018 WL 9965506, at * 3 (W.D. Pa. Jan. 2, 2018); *see also Natale*, 318 F.3d at 582-83, 585 (reversing grant of summary

[4] It is unclear to which time period this particular allegation (which alleges "failure to perceive," i.e., negligence) refers.

judgment of no deliberate indifference where prison medical workers did not promptly administer insulin despite knowledge that Plaintiff was an insulin dependent diabetic).

As Plaintiff has stated that Connections employees were aware of her serious medical condition and initially failed to administer prednisone despite knowing of her condition, I find that Plaintiff has alleged deliberate indifference. Plaintiff has pleaded facts that indicate that medical employees were aware of Ms. Hurley's condition, given her two recent hospitalizations. (D.I. 1, Ex. A at ¶¶ 2, 5-8). Plaintiff also raised the issue with "Medical" and when her medication was being distributed. (*Id*. at ¶¶ 8, 9). Lastly, Plaintiff alleged that the medical staff would have been aware of the risk to Ms. Hurley's bowel condition that would result from the failure to provide her with steroids. (*Id*. at ¶ 42). Together, these allegations "indicate something more than a dispute as to the adequacy of medical care or the course of treatment." *Crawford*, 2018 WL 9965506, at * 3.

In addition, I find that Plaintiff has alleged deliberate indifference in connection with her treatment on April 6. Plaintiff alleges that Connections employees refused to order her transferred to the hospital and "refused to call the doctor until a reasonable hour." (*Id*. at ¶ 13). Again, the timeline in Plaintiff's Complaint is unclear but it appears that the refusal to call the doctor occurred after Ms. Hurley had requested medical help at 9:00 p.m. and was vomiting bile. (*Id*. at ¶¶ 10, 13, 18-19). On its face, the medical staff's refusal to page a doctor "during pre-dawn hours" (*id*. at ¶ 19) despite Ms. Hurley's condition constitutes a delay in necessary medical treatment for a non-medical reason. *Rouse*, 182 F.3d at 197. Plaintiff alleges that Connections' delay once she began experiencing symptoms "aggravated her condition and made it worse." (*Id*. at ¶ 29).[5]

[5] As above, it is unclear if this allegation refers specifically to the night of April 6 or more generally to the time period following March 26.

Next, I must consider whether Plaintiff has alleged a policy or custom on behalf of Connections. In relevant part, the Complaint alleges:

> 48. Connections and DOC defendants knew that the medical employees of Connections had a practice of ignoring inmates' serious medical conditions. Tracy Hurley was not the only inmate to suffer due to the lack of proper medical care. They knew that there has been hundreds of complaints, grievances and lawsuits about poor medical care in DOC facilities and that Connections consistently failed to respond to inmates' requests for medical treatments for serious medical conditions.
> 49. Connections had a practice of continuously and knowingly violating standards of care for treating inmates who were suffering from serious medical conditions. Connections has not taken any reasonable steps to address that practice either before or after Tracy Hurley laid on the floor in agony.

(D.I. 1, Ex. A at ¶¶ 48-49). Plaintiff relies on *Natale* to argue that she has pleaded facts that indicate that Connections failed to establish a policy to address the medication needs of seriously ill inmates. (D.I. 6 at 21).

The Court in *Natale* explained that the failure to act in the face of a need that "is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights" can constitute deliberate indifference on the part of a policymaker. *Natale*, 318 F.3d at 584. However, Plaintiff has only alleged broadly that Connections was aware that its employees "ignore[ed] inmate's serious medical conditions" (D.I. 1, Ex. A at ¶ 48) and does not allege with any specificity how Connections' failure to implement a policy was the "moving force behind the injury alleged." *Martin v. Sec'y of Corr.*, 2018 WL 2465180, at *3 (M.D. Pa. June 1, 2018) (citing *Berg v. County of Allegheny*, 219 F.3d 261, 275-76 (3d Cir. 2000)). As Connections argues in its brief, Plaintiff's broad allegations are undermined by the medical care Ms. Hurley received, as described in the Complaint. (D.I. 7 at 2). "To satisfy the pleading standard, [Plaintiff] must identify [the] custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). Plaintiff does not

comply with this requirement. Even assuming that the allegation is that Connections had a policy or custom that medical staff should ignore the serious medical conditions of the inmates is plausible (and, I think, to state it in that fashion is to say that Connections' policy was for medical staff to be deliberately indifferent), which I doubt based on the repeated transports of Plaintiff to an outside hospital, (D.I. 1, Ex. A at ¶¶ 2, 5, 14) the policy is not connected to some number of doses of prednisone being missed or to a delay in requesting or obtaining a doctor or an ambulance.

Since it is plausible that Plaintiff could replead the §1983 count to allege the requisite policy or custom, I will dismiss that count without prejudice.

**B. Medical Malpractice Claims**

Connections argues that, to the extent Plaintiff alleges medical negligence, such claims must be dismissed because the Complaint was filed without an affidavit of merit as required by 18 Del. C. § 6853(a)(1). (D.I. 4 at 18-19). In response, Plaintiff cites to *Natale* for the proposition that no affidavit is required where a juror's common knowledge would suffice. (D.I. 6 at 22). However, the *Natale* court was considering the common knowledge exception under New Jersey law. *Natale*, 318 F.3d at 579-80.

The plain language of 18 Del. C. § 6853(a)(1) does not include a "common knowledge" exception.[6] The Delaware Supreme Court declined to recognize such an exception, explaining that "the proximate cause of injuries that are claimed to be attributable to medical negligence are not within the common knowledge of a layperson." *O'Donald v. McConnell*, 850 A.2d 960 (Table), 2004 WL 1965034, at *2 (Del. Aug. 19, 2004). Accordingly, Plaintiff must submit an affidavit of merit to proceed with a medical negligence claim under Delaware state law.

[6] The statute includes three exceptions, none of which are applicable here. 18 Del. C. § 6853(e)(1)-(3).

## IV. CONCLUSION

For the reasons set forth above, Connections' motion to dismiss for failure to state a claim (D.I. 3) is **GRANTED.** The case against Connections is **DISMISSED** without prejudice.

IT IS SO ORDERED this 22nd day of February 2021.

/s/ Richard G. Andrews
United States District Judge